_____

No. 95-1802
_____

United States of America,           *
                                     *
          Plaintiff-Appellee,        *       Appeal from the United States
                                     *       District Court for the
     v.                              *       District of Minnesota.
                                     *
Gregory Lee Melina,                  *
                                     *
          Defendant-Appellant.       *

_____

Submitted:  June 12, 1996

Filed:  November 29, 1996
_____

Before LOKEN, JOHN R. GIBSON, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

     Gregory Melina appeals from the final judgment entered by the
district court[1] upon his conviction of aiding and abetting arson.  He
claims that (1) the district court erred by failing to sever his case from
a nontestifying codefendant's, (2) the district court erroneously excluded
evidence that would have shown that a third party was responsible for the
fires, (3) the government failed to show any connection between the
building that was burned and interstate commerce, and (4) the evidence was
insufficient to sustain his conviction.  We affirm.

_____

     [1]The Honorable Richard H. Kyle, United States District Judge
for the District of Minnesota.

                              I.

     This case arises out of two deliberately set fires that destroyed
Eddy's Hamburger and Malt Shop (Eddy's), located in Long Lake, Minnesota,
and owned and operated by John Charles Flaherty.  The fires occurred
approximately two weeks apart, the first on December 31, 1988, and the
second on January 12, 1989.  Flaherty and appellant Melina were charged in
connection with the fires in a three-count indictment.  The first two
counts charged the defendants pursuant to 18 U.S.C. § 844(i) and § 2 with
aiding and abetting each other in malicious damage and destruction and
attempted damage and destruction of a building being used in interstate
commerce.  Each of the two aiding and abetting counts represented one of
the fires.  The defendants were also charged with a conspiracy count under
18 U.S.C. § 371.

     Melina and Flaherty pleaded not guilty to the charges in the
indictment, and the case proceeded to trial.  At the conclusion of the
evidence, the district court dismissed the conspiracy count on the basis
of insufficient evidence.  Flaherty was found guilty of both aiding and
abetting counts, but Melina was found guilty of only the second count,
which concerned the January 12 fire.  A more complete recitation of the
facts and the circumstances surrounding the arsons can be found in this
court's opinion affirming Flaherty's conviction on direct appeal.  See
United States v. Flaherty, 76 F.3d 967, 969-70 (8th Cir. 1996).

                              II.
                              A.

     Melina contends that the district court erred in failing to sever his
trial from Flaherty's.  Melina first argues that the district court's
failure to sever his trial violated the Bruton rule because, even though
Flaherty did not testify, the court

                              -2-

admitted out-of-court statements made by him that implicated Melina in the crime.  See Bruton v. United States, 391 U.S. 123 (1968).

In Bruton, the Supreme Court held that in a trial where two or more defendants are tried jointly, the admission of a nontestifying codefendant's confession that expressly implicates the defendant violates the defendant's Sixth Amendment confrontation rights, even if the district court gave the jury limiting instructions to consider the confession only against the codefendant who confessed.  Id. at 126; United States v. Escobar, 50 F.3d 1414, 1422 (8th Cir. 1995) (applying Bruton).  However, "[i]f a codefendant's confession does not incriminate the defendant on its face, but does so only when linked to additional evidence, it may be admitted if a limiting instruction is given to the jury and the defendant's name is redacted from the confession."  Flaherty, 76 F.3d at 972 (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)).  Furthermore, Bruton does not apply at all when a codefendant's statements do not incriminate the defendant either on their face or when considered with other evidence.  Escobar, 50 F.3d at 1422.

In the instant case, Melina points to three out-of-court statements made by codefendant Flaherty that serve as the basis for his Bruton argument.  The first was Flaherty's denial that he had contact with Melina during the time frame when the arsons occurred; this statement was made in a deposition in a civil case in which Flaherty was seeking to recover insurance benefits for the destruction of Eddy's.  The second was Flaherty's statement to law enforcement officers concerning the nature of his relationship with Melina.  The third was Flaherty's statement to one Liz Sorenson, shortly after the fires occurred, that he was  trying to locate Melina.  The district court expressly instructed the jury that it was to consider the out-of-court statements made by Flaherty and Melina only with respect to the guilt of the individual who made the statements.  See Flaherty, 76 F.3d at 971 n.4.

We find no Bruton violation here. The statements that Melina challenges do not in any manner on their face inculpate Melina but, at most, inculpate Melina when considered with other evidence received at trial. In fact, they do not refer to either the December 31 fire or the January 12 fire on which Melina's conviction rested and do not refer to any wrongdoing at all. Assuming that Flaherty's statements are incriminating when considered with other evidence received at trial, the district court's limiting instructions effectively cured any risk of harm to Melina. See id. at 972.

In any event, even if we were to conclude that the admission of Flaherty's statements constituted a Bruton violation, such a conclusion would not advance Melina's case, because the error in admitting the statements was harmless. See Flaherty, 76 F.3d at 972 (harmless error analysis applicable to Bruton violations). As we outline more fully below, the evidence against Melina is overwhelming, even if these statements are not considered.[2]

---

[2]Similarly, we reject Melina's argument that the jury must have used Flaherty's out-of-court statements as substantive evidence against Melina because the two defendants were not linked by any other evidence, and that accordingly, under Lee v. Illinois, 476 U.S. 530, 546 (1986), his conviction must be reversed. The Lee Court held that where a fact finder relies in part on an inadmissible confession in determining the defendant's guilt, the conviction must be reversed. However, Lee is inapposite in this case because Lee applies only in instances in which the codefendant's statement inculpates the accused and, as we noted above, Flaherty's statements did not inculpate Melina.

We likewise reject Melina's claim, based on United States v. Alonzo, 991 F.2d 1422, 1427 (8th Cir. 1993), that the circumstances surrounding the admission of Flaherty's denials of contact with Melina suggest that the jury "inevitably used" the statements as substantive evidence against Melina. In Alonzo, we recognized that a coconspirator's statements presented for the purpose of providing background, see Fed. R. Evid. 801(c), but which also provide direct evidence of a defendant's guilt, may so seriously prejudice the defendant that a limiting instruction may not cure the problem. Id. at n.5. The statements at issue here are of a quite different nature than the one at issue in Alonzo, because Flaherty's

-4-

In addition to his <u>Bruton</u> claim, Melina also makes a general argument that the district court should have severed his trial from Flaherty's. Melina contends that severance was required when the district court dismissed the conspiracy counts against him and Flaherty because, without the conspiracy, the taint from the out-of-court statements of one defendant had a spillover effect onto the other defendant.

There is "a clear preference `for joint trials of defendants who are indicted together.'" <u>United States v. Shivers</u>, 66 F.3d 938, 939 (8th Cir.) (quoting <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993)), <u>cert. denied</u>, 116 S. Ct. 581 (1995). Further, individuals who are charged in an indictment as coconspirators should, as a general matter, be tried together. <u>United States v. Koskela</u>, 86 F.3d 122, 126 (8th Cir. 1996); <u>Shivers</u>, 66 F.3d at 939. Absent some showing of prejudice, it is of no consequence that the conspiracy counts were dismissed by the district court. <u>See</u> <u>Schaffer v. United States</u>, 362 U.S. 511 (1960) (joinder of seven defendants proper despite dismissal of conspiracy count at the conclusion of the government's case).

We review the district court's denial of a defendant's motion to sever for an abuse of discretion. <u>United States v. Bordeaux</u>, 84 F.3d 1544, 1547 (8th Cir. 1996). To show that a district court's denial of a motion to sever was an abuse of discretion, a defendant must demonstrate that the district court's failure to sever the trials "resulted in severe or compelling prejudice." <u>Koskela</u>, 86 F.3d at 126. This burden is satisfied "when a defendant is deprived of an appreciable chance for an acquittal, a chance that he would have had in a severed trial." <u>Id.</u> More specifically,

---

statements did not directly implicate Melina. We therefore conclude that the district court's cautionary instructions sufficiently cured any danger of prejudice.

-5-

"[t]o show clear prejudice, a defendant must show that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence." Bordeaux, 84 F.3d at 1547.

Melina has not demonstrated that the failure to sever his trial denied him an appreciable opportunity for an acquittal. Flaherty's and Melina's defenses do not appear to be irreconcilable; on the contrary, their defenses were quite consistent, because both defendants sought to prove that a third party, a juvenile described as T.E.H., was responsible for the arsons. Melina has also made no showing that the jury had difficulty in compartmentalizing the evidence, and in fact, the jury's verdict finding Flaherty guilty with regard to both fires and Melina guilty only with respect to the January 12 fire is evidence of the jury's ability to compartmentalize the evidence. See Koskela, 86 F.3d at 126 (defendant's acquittal on one count sufficient to rebut claim that jury was unable to compartmentalize the evidence). We conclude, as we did in Flaherty, that the district court's limiting instructions were more than adequate to alleviate any risk of prejudice. See Flaherty, 76 F.3d at 972.

Accordingly, we reject Melina's contention that the district court erred by failing to sever his trial from codefendant Flaherty's trial.

B.

Melina claims the district court erred by excluding evidence that both Flaherty and Melina claimed tended to show that a third party was responsible for the arson. Specifically, Flaherty and Melina sought to present evidence that juvenile T.E.H. was a potential suspect in setting the fire that destroyed Flaherty's restaurant. They suggested that T.E.H., who was a former Eddy's

employee, had set a fire in Flaherty's son's school locker.  T.E.H. was charged with arson in state court for the fire in Flaherty's son's locker, but later pled guilty to one count of burglary in exchange for the arson charge being dismissed.  At the close of the evidence in the present case, Flaherty's counsel sought to introduce a copy of the dismissed state court complaint charging T.E.H. with arson, obviously for the purpose of creating the inference that T.E.H. may well have been responsible also for the fires at Eddy's.  The district court denied admission of this evidence.  Although Flaherty's counsel was the one who sought to introduce the documents, Melina's counsel objected to the court's denial of the admission, and therefore we will assume for the purposes of discussion that Melina has adequately preserved this issue for our review.

We review the district court's denial of the admission of this evidence for an abuse of discretion.  Flaherty, 76 F.3d at 973.  In Flaherty, over a dissent, we held that the district court did not abuse its discretion by excluding this evidence under Federal Rule of Evidence 403. Id. at 973.  Our ruling was based on the facts that "the probative value of the proffered evidence was slight," only "a weak offer of proof" had been made, and "the fires were not started in a similar manner."  Id. Melina has provided no reason why we should reach a different conclusion with respect to the identical issue and identical argument.  Accordingly, we reach the same conclusion as we reached in Flaherty and hold that the district court committed no abuse of discretion in excluding this evidence under Federal Rule of Evidence 403.

C.

Under 18 U.S.C. § 844(i), the government must establish that the damaged property at issue was used in interstate commerce or in an activity that affected interstate commerce. Relying on United States v. Lopez, 115 S. Ct. 1624 (1995), Melina argues that the government presented insufficient evidence to establish the interstate commerce element of the crime of arson under § 844(i).

At trial, the parties in this case entered into a fact stipulation stating that "Eddy's Malt Shoop [sic] and Restaurant was heated with, and otherwise utilized natural gas furnished to it by Minnegasco, which natural gas was purchased from sources outside of the State and District of Minnesota." (Gov't's Addend. at A - 7.) Both defense counsel and government counsel acknowledged that this stipulation was sufficient to satisfy the interstate commerce element under this court's en banc holding in United States v. Ryan, 41 F.3d 361 (8th Cir. 1994), cert. denied, 115 S. Ct. 1793 (1995). The Ryan case was explicitly mentioned when the parties were discussing this issue. Melina did not object to the jury instructions on the interstate commerce issue or challenge the sufficiency of the government's proof on the interstate requirement in his motion for judgment of acquittal. Additionally, Flaherty's counsel stated that "there is not an [interstate commerce] issue in this case . . . ," (Trial Tr. at 1003), and Melina's counsel tacitly agreed.

We dealt with this precise issue in Flaherty and held that Flaherty's similar stipulation, coupled with his failure to raise the issue of interstate nexus either in his motion for judgment of acquittal or with respect to the jury instructions, was a complete waiver of the issue. Flaherty, 76 F.3d at 973. Moreover, we noted that Flaherty fully agreed with a jury instruction that stated that the interstate nexus could be satisfied by way of gas used to heat

-8-

the building which originated from out-of-state, and this instruction mirrored the instruction we upheld in <u>Ryan</u>. <u>Id.</u> Because Flaherty's stipulation of facts was binding on him, and such stipulation satisfied the interstate burden articulated in <u>Ryan</u>, sufficient evidence was present to satisfy the interstate commerce element of arson under 18 U.S.C. § 844(i). <u>Id.</u>

Melina's similar stipulation, considered with his failure to raise the issue of interstate commerce at any juncture during trial, likewise waived the issue for our review. Additionally, the jury instruction, to which it appears that Melina agreed and certainly did not object to, satisfies <u>Ryan</u>. Melina is bound by his stipulation of facts, and like Flaherty's stipulation, this is sufficient to meet the interstate commerce burden we described in <u>Ryan</u>. While <u>Flaherty</u> does not necessarily dictate the outcome with respect to this issue, again Melina has not demonstrated why we should reach a disparate result with respect to an identical issue. Having stipulated to facts that satisfy <u>Ryan</u>, explicitly discussing <u>Ryan</u> by name when the interstate commerce issue was being discussed and agreeing that the stipulation meets <u>Ryan</u>, and tacitly agreeing with Flaherty's counsel's statement that "there is not an [interstate commerce] issue in this case . . ." (Trial Tr. at 1003), Melina cannot now be heard to complain that insufficient evidence exists to satisfy the interstate commerce element under § 844(i).[3]

Even if Melina had not waived this issue, his argument fails on the merits. He relies on <u>Lopez</u>, arguing the government was required to show a substantial connection between the natural gas

---

[3]Melina seems to admit as much, stating in his brief that "[s]ince the government agreed to a stipulation there are no adverse inferences which the Court can draw and, therefore, the Court is bound to follow what the parties have stipulated." (Melina's Br. at 10.)

used to heat the building in which Eddy's was located and interstate commerce. Melina contends that the natural gas does not substantially affect interstate commerce and thus fails to satisfy the interstate commerce requirement under § 844(i).

Again, we rejected this precise argument in Flaherty, holding that Lopez was simply inapplicable. Flaherty, 76 F.3d at 973. There we held that, unlike the Gun-Free School Act (18 U.S.C. § 922(q)) struck down in Lopez, the arson statute at issue contains an explicit jurisdictional requirement that the affected property be "used in interstate or foreign commerce." 76 F.3d at 974 (internal quotations omitted). Because the statute assailed in Lopez did not contain a similar jurisdictional element, and because the Lopez Court did not discuss the quantity of evidence necessary to satisfy such an explicit jurisdictional element, Lopez by its terms was inapposite. Id. See also United States v. McMasters, 90 F.3d 1394, 1397-99 (8th Cir. 1996) (rejecting a facial challenge to § 844(i) under Lopez because § 844(i) has express jurisdictional requirement; rejecting an "as applied" claim because the property at issue was rental property and Supreme Court had previously held that rental property affects interstate commerce).

We decline to depart from Flaherty's holding on this issue simply because, again, we do not find Lopez's analysis applicable due to the § 844(i)'s express jurisdictional element. In sum, we reject Melina's argument that Lopez requires that his conviction be reversed because the government failed to establish a substantial connection with interstate commerce in this case. It follows that we also reject his broader argument that there was insufficient evidence to prove the interstate requirement for the offense of arson under 18 U.S.C. § 844(i).

D.

Melina finally contends that insufficient evidence exists to sustain his conviction for aiding and abetting arson. In evaluating his claim, we review the evidence in the light most favorable to the verdict, granting it every reasonable inference that can be drawn from the evidence. United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995). We will reverse "only if we conclude that a reasonable fact finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." United States v. Jenkins, 78 F.3d 1283, 1287 (8th Cir. 1996). Having reviewed the record in the light most favorable to the verdict, we conclude that the government presented sufficient evidence to support Melina's conviction under 18 U.S.C. § 844(i) and § 2 in connection with the January 12 fire.

Melina and Flaherty had known each other since the early 1980s. Although both denied having contact with each other during the time of the incident, Melina stated in a deposition in Flaherty's civil case that the last time he had seen Flaherty, Flaherty was driving a white Cadillac. When combined with Flaherty's wife's testimony that the only white Cadillac the family had owned they possessed between September of 1988 and March of 1989, an inference can be drawn that Flaherty and Melina were in contact with each other during the time period that the fires occurred. Thus, the jury could reasonably have inferred that Melina and Flaherty had falsely denied having contact during the time period of the fires.

At some point after the fires, one Heather Westegaard, who was the sister of an unindicted coconspirator, asked Melina about his connection to "Johnny," which happened to be Flaherty's nickname. Melina erupted violently and began screaming obscenities and

threats at Westegaard, informing her in very specific terms that physical harm would befall her and her boyfriend if she continued to inquire into the matter. Given Melina's violent response to Westegaard's innocuous question, a jury could reasonably have concluded that Melina had a guilty conscience and was seeking to distance himself from Flaherty after the fire.

Physical evidence also linked Melina to the fire. A blackboard was seized from Melina's residence a couple of years after the fire. Although the blackboard did not possess markings that were discernible to the naked eye, the use of laser technology revealed a diagram of the layout of Eddy's restaurant, along with local landmarks close to Eddy's restaurant. Melina admitted that he drew the diagram but insisted to law enforcement officers that the diagram was not Eddy's restaurant; he claimed the diagram represented instead a local bank that he and a third party had intended to rob. The diagram was drawn with such detail matching that of the restaurant and local landmarks, however, that the jury could easily have concluded it was in fact a representation of the restaurant and that someone with intimate knowledge of both the restaurant and the general area had to have assisted in making the diagram. The evidence at trial indicated that Flaherty was the only individual who knew Melina and who also knew the specifications of the restaurant displayed in the diagram. This evidence suggests the reasonable inference that Flaherty and Melina drew the diagram and discussed the arson.

Finally, a search warrant executed at Melina's house uncovered containers of gasoline and fuel oil, which can be used as accelerants for a fire. The government presented testimony that similar accelerants were used in connection with the January 12 fire. While gasoline and fuel oil are substances that are possessed by many members of society, Melina's possession of these substances, and the fact that similar accelerants were used in the

January 12 arson, is simply some additional evidence a reasonable jury could have considered in determining Melina's guilt.

After reviewing all of the evidence in the light most favorable to the verdict, we conclude that the government presented sufficient evidence to sustain Melina's conviction.  Put another way, a reasonable fact finder could have concluded Melina's guilt of the January 12 arson beyond a reasonable doubt.  Accordingly, we reject Melina's argument that the evidence was insufficient to sustain his conviction.

## III.

For the reasons outlined above, we affirm the judgment of the district court.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent from Part IIB of the court's opinion today.

I believe that the court errs in refusing to allow evidence tending to show that a third party was responsible for the arson.  I articulated my reasons fully in my dissent in United States v. Flaherty, 76 F.3d 967, 974-75 (8th Cir. 1996).  In my view, the district court abused its discretion in rejecting the evidence under Rule 404(b), and did not base its reasoning on Rule 403.  The exclusion of the evidence was prejudicial error.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.